LeGRAND JACKSON, PLAINTIFF-RESPONDENT, v. PIONEER ADHESIVE WORKS, INC., ET AL., DEFENDANTS-APPELLANTS.

Submitted October 2, 1944—Decided January 16, 1945.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and PERSKIE.

For the defendants-appellants, *James A. Coolahan*.

For the plaintiff-respondent, *Heuser & Heuser*.

The opinion of the court was delivered by

Donges, J.  This·is an appeal from a judgment entered in Monmouth County Court of Common Pleas in favor of the plaintiff and against the defendants after a trial before a jury.  By his suit plaintiff sought to recover from defendants compensation for overtime services performed by him while in their employ.  The defendants are corporations connected by stock ownership and apparently plaintiff was uncertain as to which was his employer.  The judgment is against both defendants but no point is made of this.

The suit was under a federal statute known as the Fair Labor Standards Act, 29 *U. S. C.,* ¶¶ 201-219 (*Supp.* 1939 as amended).  The act provides for minimum wages and maximum hours in certain industries (of which defendants' was one) and under its terms plaintiff was entitled to compensation at the rate of time and one-half for all hours worked in excess of forty-four hours per week from the time the act became effective.  Plaintiff sought such compensation from the effective date of the act, October 24th, 1938, to May 15th, 1939, when his employment by defendants ceased.

Plaintiff testified that his agreement of hiring called for compensation at the rate of sixty-eight cents an hour.  *Exhibit P-2* consists of the payroll records of the defendants from the week ending November 18th, 1938, to the end of the employment.  For the first of the weeks shown thereon plaintiff is noted as having worked forty-four hours and to have received the wage of $30.  Thereafter no hours of work are noted for plaintiff and his wage each week was $30.  He testified that during the period in question he worked 1,067 hours of overtime.

The defendants contended that the plaintiff was not subject to the terms of the statute because he occupied an executive position and was therefore exempt.  As to this a question of fact was presented which was submitted to the jury and

resolved in favor of the plaintiff. The jury returned a verdict for the plaintiff for the full sum sought, and from the resulting judgment defendants appeal.

There was a rule to show cause allowed, heard and discharged in which the grounds were that the verdict "was a result (1) of a compromise by the jury (2) that said verdict was contrary to law and contrary to the charge of the court." Exceptions were reserved.

The first three points argued in appellant's brief are (1) that plaintiff was an executive and not subject to the act, (2) that plaintiff did not sustain the burden of proof required to establish his claim, and (3) the verdict was the result of a compromise. A statement of these points demonstrates that they involve solely questions of fact determined by the jury and do not point out errors of law committed by the trial judge. The plaintiff's evidence made out a case for the jury and it is not now urged that there was error in the refusal to nonsuit. There was no motion for a directed verdict. Furthermore, it would seem that these three points, having to do with the sufficiency of the evidence, were necessarily embraced within the ground under the rule to show cause which alleged that the verdict was a result "of a compromise by the jury." In any event, there is no merit in the points.

Point 4 concerns the admission into evidence, over objection and exception, of *Exhibit P-1* which was a daily record made by the plaintiff of the number of hours overtime he worked each day between October 24th, 1938, and May 15th, 1939. This record was offered in evidence during plaintiff's direct examination and was objected to on the ground that it was a self-serving document, and the trial court held that it was self-serving. Thereupon the record was shown to the plaintiff for the purpose of refreshing his recollection. Counsel objected to .this but the trial court permitted it. It was not, however, used for that purpose and no questions were asked of plaintiff which he answered by refreshing his recollection from the written paper. The following questions and answers appear in the record:

"*Q.* Now, sir, will you tell me the reason for beginning this book on October 24th, 1938? *A.* That's the day the Wage

Hour Law went into effect and if I worked over that time I was entitled to time and a half and I wanted to keep my own records.

"Q. And these entries were made by you after each day's work, is that right, sir? A. Yes, sir.

"Q. And that runs through to the date of your dismissal? A. My discharge, yes, sir, May 15th."

Thereupon the offer in evidence was renewed and the paper was received and marked in evidence.

Obviously this paper was not a record made in the ordinary course of business. It was made by the plaintiff for his own purposes, because he says the company's official payroll records were kept in such fashion as to conceal the working of overtime, and was made for the very purpose of using it to make a claim against his employer for overtime work. It is obviously a self-serving document.

It was attempted to use it to refresh the plaintiff's recollection, but, as stated, that line of examination was not pursued. If the witness, upon looking at the writing, had said that it did refresh his recollection, he could have testified with its assistance, but it would not have been admissible in evidence as an exhibit. *Crothers* v. *Caroselli,* 126 *N. J. L.* 590, where Chancellor Campbell said: "The paper was then presented to him for the purpose of refreshing his recollection, which he said it did. The use of the 'refreshing' statement was then at an end and not admissible in evidence."

Plaintiff contends that the paper was properly admitted under the cases of *Cottentin* v. *Meyer,* 80 *N. J. L.* 52, and *Chmiel* v. *Yatsko,* 124 *Id.* 510. In the former of these cases this court said:

"The plaintiff's book of expenditures was properly admitted. It was not strictly a shop book, amounting of itself to original evidence under the well-known rule. It was rather a memorandum kept by Cottentin, apparently with the knowledge of Meyer and McKenna, and was admissible when proved by Cottentin's testimony as to the correctness of the items; the original testimony is Cottentin's evidence upon the witness stand. The book, as Professor Wigmore says, is merely the witness' record of his past recollection.

*Greenl. Evid. (Wigm. ed.)* 212, ¶ 120c. The same view is suggested by Mr. Justice Reed in *Rumsey* v. *New York and New Jersey Tel. Co., 20 Vr. 322, 326."*

The doctrine of the admissibility of written evidence as a present record of past recollection has been recognized in many jurisdictions. It is discussed at length in the case of *Kinsey* v. *State,* 49 *Ariz.* 201; 65 *Pac. Rep.* (*2d*) 1141; 125 *A. L. R.* 3, and in the annotation in the last mentioned volume. One called upon to testify may recall the event independently and, if so, is competent to testify from his memory. If unable to recall he may have his memory refreshed by reference to a written document and if this is so he may then testify from his recollection as refreshed. "This does not make the instrument competent to speak, but, by its operation on the mind of the witness, the mind becomes repossessed of the fact, and the witness is able to speak to the fact through power of recollection." *State* v. *Easter,* 185 *Io.* 476; 170 *N. W. Rep.* 748. In such a case the instrument itself is not admissible in evidence. *Crothers* v. *Caroselli, supra.*

In the third class of cases, the witness being unable to recall the event and, being shown the written document for the purpose of refreshing his recollection, still being unable to recall, the doctrine of record of past recollection is invoked. "If he is then able to say that he made the entry, or caused it to be made, and at the time it was his purpose or duty to record the fact as it then existed, the record becomes a competent witness, not because it is a record of an event, but because it speaks the past knowledge of a witness to a fact occurring within the knowledge of the witness, truthfully recorded." *State* v. *Easter, supra.*

In the instant case no such situation is shown. The document was offered as a record kept by the plaintiff from day to day of his overtime work. He was not questioned on this subject other than that he testified to the total number of hours of overtime he worked. We think the paper was not admissible as a record of past recollection because the necessary foundation, as outlined above, was not laid. It was self-serving and the objection to its admission should have been sustained.

Nor can we say that it was harmless as merely corroborative of plaintiff's testimony of the total hours overtime he worked. As was said by Mr. Justice Case in *Springer* v. *Labow,* 108 *N. J. L.* 68, "A thing in writing carries, particularly with the layman, a weight of its own."

The judgment is reversed, and a *venire de novo* awarded, costs to abide the event.