**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2369-21

NICOLE MORALES,

    Plaintiff-Respondent,

v.

IRMA R. ARAKAKI,

    Defendant-Appellant.

_____

> Argued September 11, 2023 – Decided December 27, 2023
>
> Before Judges Gilson, DeAlmeida and Berdote Byrne.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. DC-004194-21.
>
> Crystal E. Colindres argued the cause for appellant (Gregory P. Helfrich & Associates, attorneys; Crystal E. Colindres, on the brief).
>
> Nicole Morales, respondent, argued the cause pro se.

PER CURIAM

    Defendant Irma R. Arakaki appeals from the December 17, 2021 judgment

of the Special Civil Part entered after trial awarding plaintiff Nicole Morales

$4,582 in damages arising from a motor vehicle collision, as well as the court's March 25, 2022 order denying Arakaki's motion for a new trial. We reverse.

I.

Morales filed a complaint alleging that Arakaki's negligent operation of her truck at an intersection in Elizabeth caused an accident that damaged Morales's car. She sought monetary damages for the cost of repairing her car. Arakaki's answer alleged that Morales caused the collision through the negligent operation of her vehicle. Neither party alleged to have suffered physical injuries in the crash.

At trial, Morales and the passenger in her car testified. Because Morales appeared without counsel, her direct testimony, and that of her witness, consisted of answers to questions posed by the court. The witnesses described what they observed prior to and during the crash. Both attributed fault to Arakaki, who they testified was behind Morales at a red light. According to these witnesses, when the light turned green, Morales attempted to execute a right turn and when she was approximately fifty percent into the turn Arakaki drove her truck forward and into the passenger side of Morales's car.

Morales also testified that she had filed a claim with her insurance carrier for the damages caused in the accident. She was not asked, however, whether

the carrier had granted or denied the claim. In response to the question of why she had not repaired her car, Morales testified that she was a college student and could not "afford the bill." The entirety of Morales's testimony with respect to the amount of damages she sought was:

> [Court:] So did you get – go to any business and get an estimate for the cost to repair your car?
>
> [Answer:] Yes.
>
> [Court:] And how much will it cost to get your car repaired?
>
> [Answer:] Four thousand five hundred.
>
> [Court:] Okay. $4,500?
>
> [Answer:] Yes.
>
> [Court:] Thank you.

Morales did not identify who provided her with the estimate, what training or experience, if any, that person had, whether and how the car was inspected by the person who gave her the estimate, and what repairs were included in the estimate. Nor did the court ask Morales to produce a document or other evidence relating to the estimate.[1]

---

[1] During cross-examination, when Morales was asked to authenticate photographs of the damage to her car, she stated that the photographs had been

At the close of Morales's case-in-chief, Arakaki moved pursuant to Rule 4:37-2(b) for an involuntary dismissal of the complaint. She argued that Morales failed to present sufficient evidence to establish: (1) a prima facie case of negligence; or (2) the quantum of damages because she proffered no expert testimony of what it would cost to repair her car.

The trial court denied the motion. The court concluded that Morales provided uncontradicted evidence that, if accepted as true, would support a jury decision that Arakaki deviated from the standard of care applicable to drivers operating vehicles on public roads. In addition, the court concluded that

> plaintiff has testified without objection that the cost to repair her car is $4,500. If counsel was going to contest that that was hearsay testimony, she should have done so at the time, respectfully. However, there was no objection to the testimony, nor was there any cross-examination as to the testimony.
>
> But giving all inferences to the plaintiff, she has proven a prima facie case of negligence as well as damages.

During her case-in-chief, Arakaki provided an account of her version of the events that resulted in the collision. She testified that hers was the first vehicle stopped at the red light. According to Arakaki, when the light turned

---

taken by "the body shop," which may be a reference to the origin of the written estimate attached to her complaint. Morales did not move the written estimate, which was partially illegible, into evidence.

green, she proceeded straight, and Morales's car crossed in front of her truck from the left lane and struck her vehicle. Arakaki speculated that Morales had pulled into the intersection from a gas station on the corner and crossed in front of Arakaki's truck.

After her direct examination, Arakaki's counsel stated, "Your Honor, I am done questioning Ms. Arakaki." The court asked Arakaki follow-up questions and permitted Morales to conduct cross-examination.

After the close of the cross-examination, Arakaki's counsel stated, "in order to save judicial resources the defense rests its proof[s] on liability and move[s] for a direct (sic) verdict in favor of defendant . . . ." The court denied that motion.

As the court started to give what appeared to be its opinion after trial, Arakaki's counsel had the following exchange with the court:

> [Counsel:] Your Honor, I'm sorry to interrupt, but I do want to continue, depending on your decision, the motion for a direct (sic) verdict, if you're going to reserve your decision; if not, then I would like to move into evidence the estimate of repairs for Ms. Arakaki's vehicle. It's a substantial difference.
>
> [Court:] She didn't testify to that, counsel, and so I'm not allowing it into evidence. The motion for a directed verdict is denied, and I've heard your summation, but thank you very much.

5

A-2369-21

The court then issued its oral opinion. The court disregarded the testimony of Morales's passenger because she admitted she considered herself to be a member of Morales's family. With respect to Arakaki's testimony, the court found that there was "no possible way" the accident could have happened as she described, given the photographic evidence of the damage to the vehicles. The court found Morales provided the only credible version of how the accident took place. The court found Arakaki failed to observe the operation of Morales's car as it began to make a right turn and collided with that vehicle.

With respect to damages, the entirety of the court's opinion was:

> I find for those reasons that Ms. Arakaki is responsible for the breach of a cause of action (sic) which has led to this accident, and that Ms. Morales is entitled to a judgment of $4,500 plus filing fees. I believe it is $4,589. Judgment will enter.

On December 17, 2021, the court entered a judgment in favor of Morales in the amount of $4,582.[2]

Arakaki subsequently moved pursuant to Rule 4:49(a) for a new trial. She argued that the verdict on the negligence claim was against the weight of the evidence and that the court erred by finding that Morales met her evidentiary

---

[2] The seven-dollar difference in the amount stated in the oral opinion and the amount in the judgment is not explained in the record and is not material to our analysis of the issues raised in this appeal.

6

burden with respect to the quantum of damages based only on her hearsay testimony. Arakaki also argued that the court had improperly precluded her from offering an alternative estimate of the cost of repairing Morales's car.

The trial court denied the motion. As to the question of negligence, the court found that it reached its decision on liability after considering the evidence adduced at trial and making credibility determinations. As to the quantum of damages, the court concluded that Arakaki failed to object to Morales's testimony regarding the cost of repairs to her car, precluding her from raising that argument after trial. In addition, the court, relying on Nixon v. Lawhon, 32 N.J. Super. 351 (App. Div. 1954), concluded that Morales was qualified to "testify to the value of the vehicle and the condition of the vehicle before and after the accident[,]" which "allow[s] the [c]ourt to draw a conclusion therefrom." The court did not address the argument that it precluded Arakaki from introducing evidence of the cost of repairing Morales's car. A March 25, 2022 order memorializes the court's decision.

This appeal followed. Arakaki argues the trial court: (1) issued a verdict on liability that is against the weight of the credible evidence; (2) abused its discretion by allowing Morales to offer hearsay testimony as to the cost of repairing her car; (3) erred when it denied Arakaki's motion for a new trial

7

because she did not object to Morales's hearsay testimony; and (4) abused its discretion by precluding Arakaki from offering an alternative estimate of the cost to repair Morales's car.

II.

We begin with Arakaki's challenge to the verdict on liability. Our scope of review of the judge's findings in this nonjury trial is limited. We must defer to the judge's factual determinations, so long as they are supported by substantial credible evidence in the record. Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). This court's "[a]ppellate review does not consist of weighing evidence anew and making independent factual findings; rather, [this court's] function is to determine whether there is adequate evidence to support the judgment rendered at trial." Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

We have carefully reviewed the record and find sufficient support for the trial court's conclusion that Arakaki's negligent operation of her truck caused the accident. The court had the opportunity at trial to observe the testimony of

Morales, her passenger, and Arakaki and assess the credibility of their accounts of the accident. The court compared their testimony to photographs of the damaged vehicles and determined there was "no possible way" for the accident to have occurred as described by Arakaki. The court instead found that Morales gave the more credible description of the cause of the collision.

We are, however, constrained to reverse the trial court's conclusion that Morales proved the quantum of damages to which she was entitled to repair her car. The trial court's award of damages was based solely on hearsay.

"'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." N.J.R.E. 801(c). Hearsay is not admissible unless subject to a specific exception. N.J.R.E. 802.

Morales testified that she received an estimate that it would cost $4,500 to repair the damage to her car. Although she did not identify who told her that estimate, it is clear that the amount estimated was an out-of-court statement of another person and that it was offered for the truth of the matter asserted. Morales offered no specific exception in N.J.R.E. 802 that would permit the estimate to be admitted as evidence.

A-2369-21

In addition, Morales did not explain the qualifications and expertise, if any, of the person who formulated the estimate, whether that person examined Morales's car after the accident, and the extent of the repairs included in the estimate. The trial court, which was, in effect, conducting Morales's direct examination, asked no questions exploring whether the estimate was reliable. Not surprisingly, when issuing its decision, the trial court made no findings with respect to the reliability of the estimate, given that the record contained no evidence on which such reliability findings could be made.

The fact that Morales attached a copy of a written estimate to her complaint does not support the trial court's damages finding. Morales did not offer the written estimate as evidence. There is, therefore, nothing in the record on which the trial court could have relied to find that the written estimate was credible evidence of damages.

We recognize that Arakaki's counsel did not object to Morales's testimony on hearsay grounds. Nor did she cross-examine Morales with respect to the origins and reliability of the estimate. Whether this was a strategic decision intended to deprive Morales of the opportunity to bolster the reliability of the estimate or an oversight, we do not agree with the trial court's apparent conclusion that Arakaki's failure to object insulates Morales's testimony from

critical analysis as to its admissibility and reliability. It was plain error for the trial court to base its damages finding solely on a hearsay statement because doing so was "clearly capable of producing an unjust result . . . ." State v. Whitaker, 200 N.J. 444, 465 (2009) (quoting R. 2:10-2). The record is devoid of evidence upon which the court could have relied to find the estimate reliable.

Nor does the holding in Nixon permit admission of Morales's testimony as evidence. In that case, the plaintiff owned a car that was damaged in a collision. Nixon, 32 N.J. Super. at 353-54. During trial, he "offered his own testimony as to the value of the automobile before and after the accident." Id. at 353. His proposed testimony was based, in part, on the amount he had paid for the car about seven months prior to the accident. Id. at 354. The trial court sustained an objection to the proposed testimony on the ground that it was speculative because the owner of a car "was not qualified to testify as to the value of this automobile before and after the accident." Ibid.

We reversed. Applying the holding in Teets v. Hahn, 104 N.J.L. 357, 359 -60 (E. & A. 1928), we held that it had long been established that the owner of a car "'was competent to give his opinion as to the value of his car before the collision'" because such testimony "'did not involve expert knowledge.'" Nixon, 32 N.J. Super. at 356 (quoting Teets, 104 N.J.L. at 359-60). Thus, we concluded

A-2369-21

"that the owner of an article of personal property may, in circumstances like those present, give his opinion of its value before and after damage has been done . . . ." Ibid.

Morales, however, did not offer her personal opinion of the value of her car prior to or after the accident. Instead, during her testimony she repeated the out-of-court statement of an unnamed person expressing his or her opinion of the cost of repairing Morales's car. She was recounting a hearsay statement offered for the truth of the matter asserted. The holdings in Teets and Nixon do not address the admission of hearsay statements and are, therefore, not applicable here.

Moreover, even if the estimate is not considered to be hearsay, formulating an opinion as to the cost of repairing a damaged car requires expertise. Unlike the testimony in Nixon, which was based on the amount the car's owner had recently paid for the vehicle, Morales offered an estimate based on the experience and training, if any, of the person who formulated the estimate. Arakaki did not have an opportunity to question the reliability of the out-of-court declarant's expert opinion.

Because we reverse the trial court's finding with respect to damages, we need not address Arakaki's remaining arguments. We note, however, her claim

that the trial court precluded her from offering an alternative estimate of the cost of repairing Morales's car is not consistent with the record. According to the transcript, Arakaki's counsel asked the court for an opportunity to present an estimate to repair the damages to Arakaki's vehicle, not Morales's car. The trial court correctly observed that Morales had presented no evidence with respect to the cost of repairing Arakaki's vehicle.[3]

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] It is not clear if Arakaki's counsel misspoke at trial and meant, as she states in her brief, to offer an alternative estimate of the cost of repairs to Morales's car. The transcript page to which Arakaki cites in her brief states that she requested to offer an estimate concerning Arakaki's vehicle, not Morales's vehicle.

A-2369-21